Julia S. Acken - 021646
jacken@jsslaw.com
Dina G. Aouad - 036249
daouad@jsslaw.com
**JENNINGS, STROUSS & SALMON, P.L.C.**
A Professional Limited Liability Company
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

Attorneys for Defendant Salt River Project
Agricultural Improvement and Power District

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Blake Schoenbach,<br><br>    Plaintiff,<br><br>vs.<br><br>Salt River Project Agricultural Improvement and Power District,<br><br>    Defendant. | No.: CV-20-02504-PHX-SRB<br><br>**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Assigned to the<br>Hon. Susan R. Bolton]<br><br>**Oral Argument Requested** |

Defendant Salt River Project Agricultural Improvement and Power District ("SRP," the "Company" or "Defendant") submits the following Motion for Summary Judgment ("Motion") pursuant to Fed R. Civ. P. 56 and LRCiv 56.1.[1] SRP respectfully requests that the Court grant summary judgment in the Company's favor on Plaintiff Blake Schoenbach's claim that SRP failed to pay him overtime pursuant to 29 U.S.C. § 207(a). As described in detail below, Plaintiff's claim fails as a matter of law because SRP was not and should not have been aware that Plaintiff worked any uncompensated overtime because Plaintiff failed to record the alleged time on his time card, despite SRP's written policies and procedures and management's multiple

---

[1] On November 23, 2021, the Court entered an Order granting the parties' stipulation to dismiss Counts Two through Five of Plaintiff's Complaint, leaving only Count One (FLSA Overtime Pay Violations) remaining (Doc. 53).

1  efforts to prevent employees from working off the clock. This Motion is supported by
2  the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

4  **I.   FACTUAL BACKGROUND**

5  Plaintiff was employed by SRP as a Senior Computer Operator in the
6  Company's Data Center for approximately ten (10) years, from April 19, 2010, until
7  he resigned on October 7, 2020. (SOF ¶ 1.) From approximately April, 2016 until the
8  end of Plaintiff's employment, Deborah Meyer, the Data Center Operations Lead,
9  was his direct supervisor. (SOF ¶ 2.)

10  At SRP, Operators are responsible for monitoring and maintaining the
11  Company's computer systems, such as the mainframe. When Operators identify an
12  error code, they are responsible for recognizing the problem and ensuring proper
13  escalation and follow-up with support teams. (SOF ¶ 3.) The Operators also field
14  service calls from SRP employees that are having system difficulties and monitor
15  large print jobs, like the printing of SRP customer reports and customer power bills.
16  (SOF ¶ 4.) Finally, Operators perform "rack and stack" duties, which involve
17  removing and installing hardware at various SRP locations. (SOF ¶ 5.)

18  The Operators perform most of their monitoring duties from the Operations
19  Management Center, which Plaintiff described as a 20-foot by 20-foot room with
20  several large monitors that were operational 24-hours per day. (SOF ¶ 6.) Each
21  monitor correlates to a specific system or application that the Operators are charged
22  with monitoring. (SOF ¶ 7.) For example, there is a "critical app monitor," that
23  displays information related to critical applications, and several mainframe monitors.
24  (SOF ¶ 8.) The Operators also have access to their workstations from the OMC, so if
25  something goes wrong with one of the systems the Operators are monitoring within
26  the OMC, the Operator can resolve the matter either directly on the monitor, or by

entering the appropriate codes using his or her workstation. (SOF ¶ 9.)

Given the nature of their responsibilities, the vast majority of the Operators' job duties only could be performed in the workplace, prior to March, 2020.[2] (SOF ¶ 10.) For example, Operators were not permitted to bring their workstation computers home, so they were unable to access SRP's computer systems outside of their regular working hours. (SOF ¶ 11.) The Operators also could not perform their printing duties from home, because the printers themselves are located on site. (SOF ¶ 12.) Finally, to the extent the Operators perform "rack and stack" duties, involving the installation of actual hardware, that also necessarily had to occur at the work site. (SOF ¶ 13.)

As discussed above, the systems that Operators monitor operate 24 hours per day, 365 days per year. As such, SRP maintains at least one Computer Operator on duty at all times. (SOF ¶ 14.) The Operators' shifts overlap, so that two or more Operators will be on duty for at least thirty minutes at the beginning and end of each shift. (SOF ¶ 15.) During the regular workday, when the Operators are busiest, there are typically several Operators on duty. (SOF ¶ 16.) Plaintiff's standard shift during the time period relevant to this case was 8:00 a.m. to 6:30 p.m., Tuesday through Friday. (SOF ¶ 17.)

SRP also employs Computer Analysts in the Data Center, whose job duties include supporting internal and external clients with respect to SRP's various software applications and networks, to ensure that they are running efficiently. (SOF ¶ 18.) Analysts are expected to install and maintain patches and generally attempt to

---

[2] Beginning in approximately March, 2020, SRP's Computer Operators began working remotely due to the COVID-19 pandemic. (SOF ¶ 10, n. 1.) At that point, therefore, Operators were provided with a laptop and phone to perform their job functions remotely. (*Id.*) Plaintiff does not appear to claim, however, his circumstances while working remotely were different than they had been previously and his Complaint does not contain any such allegation. (Doc. 1-1)

3

optimize SRP's computer operations. (SOF ¶ 19.) Unlike Operators, Analysts are on duty primarily during regular working hours. As a result, however, each Analyst is required to be "on-call" for one week at a time on a rotating basis so that an Analyst is available to handle any problems that arise after hours. (SOF ¶ 20.)

The Operators and Analysts are part of a larger umbrella of SRP's information technology systems (ITS), within the ITS Infrastructure. (SOF ¶ 21.) In addition to the Operators and Analysts, the ITS Infrastructure contains several specialized teams, such as the "Server Team, Network Team, Storage Team, Mainframe Team, Virtual Team, [and] Database Team." (SOF ¶ 22.) Like the Analysts, the employees that work as part of these specialized teams are also on duty only during regular working hours. Accordingly, each team designates one or more employees to be "on call" outside of regular working hours. (SOF ¶ 23.) The Operators have access to the "on call" calendars for the Analysts, as well as all of the specialized teams, in case problems arise after hours. (SOF ¶ 24.)

SRP generally, and the Data Center specifically, maintains a robust policy regarding overtime. Pursuant to the policy,

> All operators must be paid overtime for any hours over their scheduled 40-hour shift at 1.5 their shift rate…[w]hen unexpected overtime occurs due to a coverage issue, or the need to complete a task, for example Print or a Major Incident, the operator must inform DCO Management of that unplanned overtime via email.

(SOF ¶ 25.)

When Plaintiff was supervised by Ms. Meyer, she was responsible for reviewing and approving the Operators' time cards. (SOF ¶ 26) Specifically, the individual Operators would enter their hours worked, as well as a code that indicated the type of work performed (such as "overtime" or "alternative workweek") into a software application called ServiceNow. (SOF ¶ 27.) Ms. Meyer was then able to

1 access those ServiceNow entries to review and approve the entries, and then, once
2 approved, the Department's administrative assistant entered the information into
3 SRP's official timekeeping system, Corporate Labor Entry ("CLE"), which was tied
4 directly to SRP's payroll system. (SOF ¶ 28.)

5 Typically, if an Operator had to work overtime unexpectedly due to a major
6 incident or other emergency, he or she was expected to e-mail Ms. Meyer afterward
7 to let her know they had worked the additional time and why, so that she would
8 understand the overtime entry on his or her timecard. (SOF ¶ 29.) If Ms. Meyer saw
9 an entry for unexpected overtime, and she was not aware of the reason for the
10 overtime, she would e-mail the Operator at issue and inquire as to the basis for the
11 overtime entry. (SOF ¶ 30.) Under either method, once the Operator informed Ms.
12 Meyer of the reason for the overtime, she would approve the entry so that the
13 employee could be compensated appropriately. (SOF ¶ 31.)

14 SRP also took several steps to prevent Operators, including Plaintiff, from
15 being able to work outside of their regular working hours. For example, as discussed
16 above, most of the groups within the Data Center designated certain employees as
17 "on call" outside of their regular working hours. (SOF ¶ 32.) SRP provided those
18 employees with company phones that they could take home when they were on-call
19 (Doc. 1-1 ¶ 17); however, SRP did not provide Operators with company cell phones.
20 Instead, Operators shared a single departmental cell phone, which remained with the
21 Operators that were on duty. (SOF ¶ 33.) Plaintiff acknowledges that the Operators
22 were not permitted to take the departmental cell phone home after hours. (SOF ¶ 34.)

23 SRP also did not issue Plaintiff or the other Operators a company computer or
24 an RSA token, which was necessary to access SRP's computer network from outside
25 the office prior to March, 2020. (Doc. 1-1 ¶ 18(A) & (B)) (SOF ¶ 35.) These
26 measures were intended to prevent Operators from attempting to perform work

5

outside of their regular working hours. In addition, during his employment, Plaintiff requested a "Boxer," which is an application that can be installed on someone's personal mobile phone that will allow the individual to access his or her company e-mail from his or her mobile phone. (SOF ¶ 36.) SRP denied Plaintiff's, as well as multiple other Operators' request because they were not supposed to be sending or reviewing work-related emails outside of regular working hours. In fact, several of SRP's Operators testified at their depositions that when Ms. Meyer learned they had requested Boxer or otherwise checked their work e-mail outside of their work hours, she counseled them that they were not to be checking e-mail or otherwise performing work off-the-clock because SRP was required to compensate them for all time worked. (SOF ¶ 37.)

Plaintiff concedes that he sometimes included overtime hours on his ServiceNow time cards and SRP paid him at the appropriate rate for those hours that he actually reported. (SOF ¶ 39.) Three of Plaintiff's former co-workers were deposed in this matter, and all three indicated that they would record overtime on their time cards and were compensated appropriately. (SOF ¶ 40.)

Despite this, Plaintiff insists that he regularly received calls from co-workers after hours asking work-related questions. (Doc. 1-1 ¶¶ 13-15.) In addition, he claims that SRP's management was aware that he was taking calls after hours without compensation. (SOF ¶¶ 51-53.)

In an attempt to support his sole remaining claim, Plaintiff has identified four instances in which he alleges that he placed SRP on notice that he was working uncompensated overtime. First, Plaintiff claims that at some point during his employment at SRP, he included two (2) hours of overtime on his time card and his supervisor, Ms. Meyer, removed the hours and sent him an e-mail or instant message that said, "Nice try." (SOF ¶¶ 41-42.) Second, Plaintiff indicates that when Ms.

6

1  Meyer inquired as to why his mobile phone had been disconnected, he reported to her
2  that he had changed his number because he was receiving work-related calls outside
3  of regular working hours and not being paid. (SOF ¶¶ 51-53.) Third, Plaintiff claims
4  that he reported the alleged overtime issue during a conversation with Data Center
5  Manager, Joe Kosmal, on October 2, 2020. (SOF ¶¶ 5-56.) Finally, he states that he
6  informed Rose Pfister, SRP's Human Resources Analyst, on October 8, 2020 (one
7  day *after* his last day of work at SRP) that he had been receiving calls outside of
8  regular working hours without compensation. (SOF ¶ 60.) As discussed in detail
9  below, none of Plaintiff's unsupported, self-serving statements are sufficient to create
10 a genuine issue of material fact sufficient to overcome SRP's Motion.

11 **II.    LEGAL ARGUMENT**

12         Summary judgment is appropriate if the pleadings and supporting documents,
13 viewed in the light most favorable to the nonmoving party, "show that there is no
14 genuine issue as to any material fact and that the moving party is entitled to judgment
15 as a matter of law." Rule 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23
16 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir.1994).
17 Summary judgment is appropriate against a party who "fails to make a showing
18 sufficient to establish the existence of an element essential to that party's case, and on
19 which that party will bear the burden of proof at trial." Id. at 322; *Citadel Holding*
20 *Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir.1994).

21         Plaintiff claims in this action that SRP failed to compensate him for three (3)
22 to four (4) hours of overtime he allegedly worked per week. (Doc. 1-1 ¶¶ 15 & 24)
23 Plaintiff claims further that SRP's supposed failure to pay him the wages owed was
24 "willful" and, therefore, a three (3)-year statute of limitations should apply to his
25 claims. (Doc. 1-1 ¶ 26) Although SRP disputes Plaintiff's contention that he worked
26 overtime for which he was not compensated, drawing all inferences in favor of

7

Plaintiff, the Company will assume solely for purposes of this motion that Plaintiff did, in fact, work overtime without compensation. Even operating under this assumption, however, Plaintiff's claim fails as a matter of law because he has not and cannot establish that SRP had actual or constructive knowledge that he was working uncompensated overtime.

**A.      Plaintiff has not presented sufficient information to create a triable issue of fact regarding whether SRP had actual or constructive knowledge that he was working uncompensated overtime.**

To establish a claim for unpaid overtime under the FLSA, it is insufficient for Plaintiff to establish only that he was employed and worked overtime without being compensated properly. Plaintiff must also show, as an essential element of his claim, that SRP had "actual or constructive knowledge" that he was working overtime without compensation. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102 (9th Cir. 2018) ("The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all work in excess of forty hours weekly, 29 U.S.C. § 207(a)(1), provided the employer has actual or constructive knowledge that the work is occurring." The FLSA defines "employ," as including "suffer or permit to work." 29 U.S.C. § 203(g). "[T]he words 'suffer' and 'permit' as used in the statute mean 'with the knowledge of the employer.'" *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981) (*citing Fox v. Summit King Mines*, 143 F.2d 926 (9th Cir. 1944)). "[A]n employer's actual or imputed knowledge that an employee is working is a necessary condition to finding the employer suffers or permits that work." *See, e.g., Holzapfel v. Town of Newburgh*, 145 F.3d 516, 521, 524 (2d Cir.1998); *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir.1986); *Forrester*, 646 F.2d at 414 (explaining that knowledge affords employer the opportunity to comply with the Act); *Chao v. Gotham Registry, Inc.*, 514 F.3d 280, 287 (2d Cir. 2008).

### B.     Plaintiff cannot establish that SRP had "actual" knowledge that he worked overtime without compensation.

Plaintiff asserts that SRP had both actual and constructive knowledge that he worked overtime without compensation. A review of the record in this matter, however, shows that Plaintiff only has identified four alleged communications to management, which he claims establish that SRP had "actual" knowledge that he was working uncompensated overtime. As an initial matter, Plaintiff claims that he informed Mr. Kosmal about the alleged overtime issue on October 2, 2020 (SOF ¶ 55.) He testified further that this was the first time he had spoken to Mr. Kosmal about the alleged overtime. (SOF ¶ 57.) Plaintiff also alleges that he reported the alleged uncompensated overtime to Ms. Pfister on October 8, 2020, which was one day *after* his last day of work. (SOF ¶ 60.)

These alleged instances, however, cannot defeat a motion for summary judgment on this claim because it is uncontested that Plaintiff did not perform any work for SRP, overtime or otherwise, after October 7, 2020. (SOF ¶ 60.) Accordingly, even if Plaintiff's claims are true, SRP would not have had sufficient time to act on Plaintiff's reports prior to his resignation.

In *Forrester v. Roth's I.G.A. Foodliner, Inc.*, the Ninth Circuit held, "[a]n employer must have an opportunity to comply with the provisions of the FLSA." 646 F.2d at 414. Where the employer has no such opportunity because the "acts of an employee prevent an employer from acquiring knowledge . . . of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of [29 U.S.C. § 207]." *Id.* Neither of Plaintiff's allegations regarding Mr. Kosmal or Ms. Pfister, even if taken as true, would have given SRP sufficient time to act on his allegations. Accordingly, Plaintiff's failure to report these alleged violations until just days before his

9

resignation (or, in the case of Ms. Pfister, after his resignation) denied SRP an opportunity to take action to resolve the issue. As such, these two alleged reports are not sufficient to defeat SRP's motion for summary judgment.

Plaintiff's claim, therefore, rests upon the two times Plaintiff alleges he communicated with Ms. Meyer about working overtime without compensation. These two unsupported claims, however, also fail to create a genuine issue of material fact as to whether SRP had "actual knowledge" that Plaintiff was working overtime.

As discussed above, Plaintiff alleges that he attempted to report roughly two hours of overtime on his time card that represented time he spent on work-related calls with co-workers outside of his regular working hours. (SOF ¶ 41.) He claims further that, instead of compensating him for this time, Ms. Meyer removed the hours from his time card and said, "nice try." (SOF ¶ 42) When asked during his deposition about when this alleged incident occurred, Plaintiff testified:

> A. When I worked under Deborah Meyer.
>
> Q. Do you recall the year?
>
> A. I do not. The reason I know this is because I got an email back from Deborah saying, "Nice try," she highlighted the couple of hours of overtime and then took them off…and so that's when that happened.
>
> Q. And you don't recall what year when you working under Deb Meyer that this occurred?
>
> A. I actually don't. I do not.
>
> Q. Did you talk with Ms. Meyer about why she removed that?
>
> A. I believe we communicated via email and I said, you know, "I was called on basically off hours last night." I don't exactly – I know that we talked about it or emailed about it, but I don't remember the specifics of that, the time, the communication method, or – I think it was via email but I'm not a hundred percent positive on that.
>
> …

10

> Q. Was that the first time you had ever worked outside of working hours since Ms. Meyer had been there?
>
> A. No.
>
> Q. Were there any other times that you tried to put overtime on your timecard and it was removed, to your knowledge?
>
> A. Not that I'm aware of, because after that time it was like I just – not that I remember, and I don't think so.

(SOF ¶ 43.)

Plaintiff began working for Ms. Meyer in April, 2016 (SOF ¶ 2), which is well outside the longest potential statute of limitations for Plaintiff's claim. Based upon his deposition testimony, therefore, Plaintiff does not even know whether this alleged incident occurred within the limitation period. Moreover, even taking Plaintiff's allegations as true, he does not testify that he informed Ms. Meyer that these alleged calls were occurring regularly, or that he had not been compensated for alleged "off the clock" work previously. Accordingly, this alleged report, even taken in the light most favorable to Plaintiff, does not create a genuine factual dispute as to whether this incident even occurred within the relevant time period, much less whether SRP had actual knowledge that Plaintiff was regularly working overtime without compensation.

The only remaining claim Plaintiff makes in an attempt to show that SRP had actual knowledge of his alleged unpaid overtime is his allegation that he informed Ms. Meyer that he had changed his phone number because he was receiving too many work-related calls after hours. (SOF ¶¶ 51-53.) This claim, too, however, is insufficient to defeat SRP's motion for summary judgment. Plaintiff asserts that he obtained a new mobile phone and phone number approximately one and one-half (1 ½) years prior to filing this lawsuit. (SOF ¶ 51) The issue, therefore, is whether Plaintiff has produced evidence sufficient to overcome SRP's motion, that he

11

subsequently placed SRP on actual notice that he changed the number because he was regularly working uncompensated overtime.

Plaintiff testified during his deposition that Ms. Meyer approached him at work and informed him that a co-worker had attempted to contact him over the weekend and was unable to reach him. (SOF ¶ 52.) He testified further that he informed Ms. Meyer that he "switched [his] phone number because [he was] not being paid off hours and [he was] being called off hours." (Id.) Plaintiff claims that Ms. Meyer responded, "I talked to Joe Kosmal about this and he doesn't listen…" and that Ms. Meyer told him he "still [had] to put [his] new phone number in the phone book." (SOF ¶ 53.) Plaintiff testified further that he had made an "assumption" that Ms. Meyer had, in fact, discussed the matter with Mr. Kosmal because, according to Plaintiff, when he allegedly spoke with Mr. Kosmal a year and a half later, on October 2, 2020, Mr. Kosmal also did not listen. (SOF ¶ 56)

Ms. Meyer denies that Plaintiff ever informed her that he was changing his phone number because he was receiving calls outside of working hours and not being compensated. (SOF ¶ 54.) Based upon Plaintiff's own testimony, he does not have any first-hand knowledge of whether Ms. Meyer and Mr. Kosmal ever discussed Plaintiff allegedly receiving calls outside of working hours and/or not receiving payment for alleged overtime – he simply "assumed" so. (SOF ¶¶ 56-59.)

In addition, three other Computer Operators gave depositions in this matter, and while two of them indicated that they had heard, either second-hand from a co-worker, or from Plaintiff, that Plaintiff changed his number to avoid receiving work-related calls, none of the three had any first-hand knowledge of whether Plaintiff ever reported that to Ms. Meyer or Mr. Kosmal (SOF ¶ 45.) In addition, none of the three recalled Ms. Meyer or Mr. Kosmal ever directing them or any of their co-workers to call Plaintiff outside of regular working hours; to the contrary, all three of the

12

Computer Operators relayed stories about Ms. Meyer having directed them not to perform work outside of regular working hours because SRP was required to compensate employees for all such work. (SOF ¶ 37)

Based upon the foregoing, Plaintiff has not and cannot establish that SRP had actual knowledge that he was performing work outside of regular working hours without being compensated.

### C. Plaintiff cannot establish that SRP had constructive knowledge that he was working outside of regular working hours without compensation.

Pursuant to the FLSA, even if an employer does not have actual knowledge that an employee is working overtime and not being compensated, the employer still could be liable for unpaid overtime if the Company had constructive knowledge of that fact. An employer is considered to have constructive knowledge of an overtime violation if the employer "knows or should have known that an employee is or was working overtime…" *Forrester*, 646 F.2d at 414. "'The FLSA's standard for constructive knowledge in the overtime context is whether the [employer] "should have known," not whether it could have known.'" *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 874 (6th Cir. 2012) (quoting *Hertz v. Woodbury County*, 566 F.3d 775, 782 (8th Cir. 2009) (internal citations omitted)).

> Thus an employer who **knows** or **should have known** that an employee is or was working overtime must comply with the provisions of [29 U.S.C. § 207] . . . However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of [29 U.S.C. § 207].

*Forrester*, 646 F.2d at 414 (emphasis added).

In *Forrester*, the employer provided affidavits wherein they avowed they had

13

no knowledge that the employee, Forrester, had been working uncompensated overtime hours. Moreover, Forrester knew he was required to report any and all overtime hours on his time sheets, and he further admitted that he was paid for all overtime he did report. Accordingly, the Court of Appeals found that no genuine issue of material fact had been raised as to whether the employer knew or should have known that Forrester had been uncompensated for overtime work he performed. Thus, summary judgment for the employer as to Forrester's unpaid overtime wages claim was appropriate.

The case at hand is analogous to *Forrester*. SRP provided ample instructions to its employees to not perform work outside of their regular work hours because SRP was required to compensate them for all such work. (SOF ¶¶ 37-38.) SRP also provided information through a variety of mediums instructing its employees on how to properly record any overtime hours worked and informed them to record any and all overtime hours worked on a daily basis. (SOF ¶ 38.) Other SRP employees who have testified in relation to this litigation have indicated that they knew they were required to report any and all overtime hours on their time sheets, and further admitted to being paid for all overtime they did report. (SOF ¶ 40.)

Plaintiff admits that, with the exception of the incident discussed above, that allegedly occurred at an indefinite time, through an indefinite medium, he did not record the time he spent on work-related calls outside of his regular work hours. (SOF ¶¶ 39, 46-47.) Nor did he email management to alert them to overtime worked as required by known SRP policies and practices. (Id.)

Although not controlling, the Tenth Circuit's decision in *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1130 (10th Cir.1998), is instructive; in *McKnight*, the court affirmed summary judgment for the employer, finding that "failure to record claimed time is fatal to a later claim for [the time], if the company

14

1  has no reason to be aware of the overtime." For the overtime that Plaintiff did record,
2  he was compensated accordingly. (SOF ¶ 48.) Similarly, Plaintiff's co-workers
3  testified that they also were paid for overtime that they entered into their time cards.
4  (SOF ¶¶ 40, 49-50.)

5  SRP also maintained sufficient staffing at all hours to address any needs the
6  Operators on duty might need. Indeed, Plaintiff acknowledged that the Analysts and
7  the specialty teams all had individuals "on call" outside of regular working hours, the
8  Operators had access to the "on call" schedules, and Plaintiff did, in fact, contact the
9  "on call" employees. (SOF ¶¶ 23-24)

10  Moreover, despite Plaintiff's statement in his Complaint that he was "on-call
11  24/7," he acknowledged several times that he, like the other Operators, was never
12  actually "on-call." (SOF ¶ 24.) Schoenbach's bald allegations in his Complaint that
13  he was "on-call" is not sufficient to withstand SRP's Motion. The party opposing
14  summary judgment "may not rest upon the mere allegations or denials of [the party's]
15  pleadings, but ... must set forth specific facts showing that there is a genuine issue for
16  trial." Rule 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S.
17  574, 586–87 (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th
18  Cir.1995).

19  Finally, several employees, including Plaintiff, testified that Ms. Meyer made
20  active efforts to prevent them from performing work outside of their regular work
21  hours, such as denying requests for software that would permit them to work after
22  hours (SOF ¶¶ 32-33, 37) and directly counseling them that she was denying their
23  requests because they were not supposed to be working outside of working time and
24  SRP was required to compensate them for all such work performed off the clock.
25  (*Id.*)

26  Given all of SRP's efforts in this regard, as well as Plaintiff's failure to record

his alleged overtime hours or otherwise make management aware of such hours, no genuine issue of material fact exists as to whether SRP knew or should have known that Plaintiff had been uncompensated for overtime work he allegedly performed. Accordingly, Plaintiff cannot support a claim for unpaid overtime wages and summary judgment is appropriate.

### D. Plaintiff has not established that any alleged violations were "willful."

Plaintiff also asserts in his Complaint that SRP's alleged overtime violations were "willful," and that SRP showed a "reckless disregard for whether its actions violated the FLSA." (Doc. 1-1 ¶ 26) As such, Plaintiff claims that a three-year statute of limitations should apply in this matter. Even if Plaintiff could establish any overtime violations (which he cannot), he has not produced sufficient evidence to support a finding that SRP behaved "willfully" as a matter of law.

An employer's violation of the FLSA is "willful" when it is "on notice of its FLSA requirements, yet [takes] no affirmative action to assure compliance with them." *Flores v. City of San Gabriel*, 82 F.3d 890, 909 (9th Cir. 2016). *See also Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (9th Cir. 2014) (citing *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003)). Plaintiffs bear the burden of showing willfulness. *Ader v. SimonMed Imaging Inc.*, 465 F. Supp. 3d 953, 973 (D. Ariz. 2020) (*citing* 29 U.S.C. § 255(a)). Mere negligence by the employer in determining its legal obligation is not sufficient, and a court will not presume that conduct is willful in the absence of evidence. *Ader*, 465 F. Supp. at 973 (*citing Alvarez*, 339 F.3d at 908).

SRP maintained a written policy against performing work off the clock and not recording the hours spent performing such work. (SOF ¶ 38) But in addition to maintaining such policies, as discussed above, SRP made efforts to enforce them

when the Company had reason to know that employees might be performing work outside of regular working hours. In fact, several witnesses testified that Ms. Meyer had specifically reminded them of this policy and directed them to avoid performing any work outside of regular working hours because SRP was required to pay for all such work. (SOF ¶¶ 32-33, 37.)

As stated previously, Plaintiff has asserted a handful of incidents that he alleges show that he informed SRP's management that he was working overtime without compensation. (SOF ¶¶ 41-43, 51-56, 60.) For the reasons outlined above, however, those allegations are not sufficient to establish that SRP behaved "recklessly". As such, even if Plaintiff could establish that he was owed overtime compensation, the applicable statute of limitations should be two, rather than three years.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant SRP's Motion and dispose of Plaintiff's Complaint in its entirety. In the alternative, if the Court declines to enter judgment against Plaintiff on his substantive claim, SRP respectfully requests that the Court enter an Order finding, as a matter of law, that the applicable statute of limitations should be two, rather than three years in this matter.

RESPECTFULLY SUBMITTED this 28th day of January, 2022.

JENNINGS, STROUSS & SALMON, P.L.C.

By  s/ Julia S. Acken
    Julia S. Acken
    Dina G. Aouad
    One East Washington Street, Suite 1900
    Phoenix, Arizona 85004-2554
    Attorneys for Defendant Salt River Project
    Agricultural Improvement and Power District

8066857v1(12000.8227)