**Jaburg & Wilk, P.C.**
3200 N. Central Avenue, 20th Floor
Phoenix, AZ 85012
602.248.1000

Jeffrey A. Silence (029143)
jxs@jaburgwilk.com
Corrinne R. Viola (033386)
crv@jaburgwilk.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Blake Schoenbach,

          Plaintiff,

v.

Salt River Project Agricultural
Improvement and Power District,

          Defendant.

Case No. CV-20-02504-PHX-SRB

**Plaintiff's Response to Defendants'
Motion for Summary Judgment**

[Assigned to Hon. Susan R. Bolton]

## I.      Introduction

"[I]f you have a problem, call Blake." (Plaintiff's Ex. B p. 19).[1]

That is what happened throughout Plaintiff Blake Schoenbach's ("Blake") employment with SRP. Employees in SRP's Data Center would routinely call him outside of his normal forty-hour workweek seeking assistance with urgent problems because Blake was the most experienced Operator, and he was always willing to help. Blake would also routinely work during his 30-minute lunch break and would often arrive early or stay late to help cover shifts. Blake was not paid anything for any of these hours.

---

[1] All references to "PSSOF __" are to Plaintiff's Controverting and Supplemental Statement of Facts in Support of his Response to SRP's Motion for Summary Judgment.

1   Defendant Salt River Project ("SRP") concedes for purposes of summary
2   judgment that SRP failed to pay Blake overtime. SRP, however, argues that Blake's
3   overtime claim should be dismissed in its entirety because SRP did not know or have
4   any reason to know that Blake was working overtime. Alternatively, SRP argues that
5   the statute of limitations should be limited to two years (instead of three) because SRP's
6   actions were not "willful."

7   As set forth below, SRP's Motion for Summary Judgment should be denied for
8   two primary reasons. First, there are facts evidencing SRP's actual and constructive
9   knowledge of Blake's overtime work. SRP knew Blake worked overtime. Second, these
10  same facts demonstrate that SRP's actions were "willful" for purposes of applying the
11  three-year statute of limitations.

12  SRP is not entitled to summary judgment as a matter of law because, as
13  explained below, a multitude of genuine disputes of material fact exist. At the summary
14  judgment stage, the Court must not determine the truth of the matter; rather, the Court's
15  function is to determine whether a genuine issue for trial exists. *Anderson v. Liberty*
16  *Lobby*, Inc., 477 U.S. 242 (1986).

17  As set forth below, there are no less than 37 genuine disputes of material fact.

18
19  **II.    The Knew or Should Have Known Standard in *Forrester* is Broadly
         Applied.**

20  Blake does not dispute that *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d
21  413, 414 (9th Cir. 1981) seems to be the controlling Ninth Circuit opinion.

22  *Forrester* holds that an employer is not liable under the FLSA unless (i) it knew
23  or should have known the employee was working overtime, **and** (ii) the employee
24  prevented the employer from acquiring knowledge that he or she was working overtime.
25  Specifically, *Forrester* held: "where an employer has no knowledge that an employee is
26  engaging in overtime work **and** that employee fails to notify the employer or
27  deliberately prevents the employer from acquiring knowledge of the overtime work, the
28

JABURG WILK

LAW FIRM

employer's failure to pay for the overtime hours is not a violation of s 207." (emphasis ours unless otherwise noted).

*Forrester* further states that an employer "cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).

"Labor regulations do not allow an employer to enact a policy of automatic deductions for meal breaks and then shift the burden onto the employee to ensure accurate reporting of hours or alleviate the employer's obligation to pay for time actually worked under the FLSA. Rather, it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them." 29 C.F.R. § 785.13."

### III.    Background

SRP concedes for purposes of their Motion for Summary Judgment that Blake worked overtime. However, it is necessary to provide some brief background. The background information immediately below is relevant to the core issue – whether SRP knew or should have known Blake was working overtime.

Blake's testimony, combined with his timesheets, show that he rarely, if ever, took any time off between December 2017 and December 2020, which is when he filed this lawsuit. PSSOF ¶ 92. The period between December 2017 and December 2020 is referred to here and throughout the Statement of Fact as the "Relevant Time" because the FLSA has a three-year statute of limitations. PSSOF ¶ 1.

His timesheets reflect that in nearly every single week during the Relevant Time, he worked his normal schedule (Tuesday through Friday, 8:00am to 6:30pm). PSSOF ¶ 4.The only exception was that he would take a few days off during the week of Christmas. PSSOF ¶ 99. His timesheets also show that he was always paid for ten hours for each of his four regularly scheduled shifts, a total of forty hours per week. PSSOF ¶

98. Because his timesheets show that he almost always worked his normal forty hour per week schedule and he rarely, if ever, took time off, he should have been paid overtime for any additional work he performed outside of his normal forty-hour workweek.

During the Relevant Time, Blake spent an average of four hours per week providing assistance to Data Center employees whenever they would contact him outside his normal work hours. PSSOF ¶ 103. He was not paid anything for these hours. PSSOF ¶ 117.

Blake was also rarely, if ever, able to take thirty minutes or more of uninterrupted time for a lunch break. PSSOF ¶ 79. Blake understood that he needed to deduct thirty minutes each shift for his lunch break, even on days when he was unable to take a 30-minute lunch break. PSSOF ¶ 84. As a result, Blake never reported the time he spent working during his lunch allotted 30-minute lunch break. PSSOF ¶¶ 85 – 86.

There were also many times during the Relevant Time when Blake would arrive early or stay late (generally two to three hours on each occasion) to cover shifts for the severely understaffed Data Center.  PSSOF ¶¶ 87 – 91.

Blake was not paid for any of this time. PSSOF ¶ 92.

**IV.    SRP Knew Blake was Working Overtime.**

The following facts create a genuine fact dispute about whether SRP knew Blake was working overtime:

(i)      By all accounts, Blake was the most experienced Operator in the Data Center during the Relevant Time. PSSOF ¶ 108.

(ii)     Blake's coworker, Andrei Zamfir, testified that "if you have a problem, call Blake." *Id.*

(iii)    Mr. Zamfir testified that "everyone" knew Blake was being contacted during his off hours for assistance because he was the most experienced Operator, and he was always willing to help. *Id.* at ¶¶ 23, 24, 108.

(iv)   Blake routinely sent emails to his direct supervisor, Ms. Meyer and her boss, Joe Kosmal, outside of his normal work schedule that showed he was performing work outside of his normal hours. PSSOF ¶¶ 46 – 50.

(v)   Ms. Meyer approved all of Blake's timesheets and could therefore see that he was never being paid for sending these emails. PSSOF ¶ 120.

(vi)   In or around August or September 2018, Blake reported two hours of overtime on his timesheet because he spent two hours that week outside his normal work hours providing assistance to Data Center employees. PSSOF ¶¶ 55 – 60.   When he arrived to work the next week, he had an email from Ms. Meyer with a screenshot of his timesheet. *Id*. The screenshot had his two hours of overtime highlighted. *Id*. In that same email, she also sent Blake a screenshot of the timesheet that she submitted, which showed that she had removed the two hours from his timesheet. Her email said: "Nice try." *Id*.

(vii)   Blake immediately responded to Ms. Meyers' "nice try" email to let her know that he reported these two hours of overtime because he spent two hours providing assistance Data Center employees outside my normal work hours. *Id*.

(viii)   In September 2018, after Ms. Meyer refused to pay Blake for the two overtime hours spent answering questions from Data Center employees, Blake changed his cell phone number for the sole purpose of avoiding calls from Data Center employees. PSSOF ¶ 61. Blake had to work with Verizon to change his number and then spend significant time and effort notifying friends and family that he had changed his number. PSSOF ¶ 72.

(ix)   There is no reason for Blake to have changed his phone number.

a.   He is not wanted by the police.

5

b.  He does not have a stalker. Even if he did, he could simply block his phone number from receiving any texts or calls.

c.  The area code remained for his new phone number remained the same (480) area code as before. Sometimes people change their number when they move to have the area code match the new city where they live, but that is the case here. PSSOF ¶ 63.

(x)  Within a month or so after changing his cell phone number in September 2018, Blake told Ms. Meyer: "I changed my cell phone because I am being called off hours and not being paid for it." PSSOF ¶ 69.

(xi)  Ms. Meyer responded to Blake's comment about changing his cell phone number by saying that she had already spoken with Mr. Kosmal about him not being paid for helping Data Center employees outside his normal work hours, and "he doesn't listen." PSSOF ¶ 71.

(xii)  Ms. Meyer admitted in her deposition that Blake told her he changed his phone number, although she claims that Blake never told her why he changed his number, and she never asked. PSSOF ¶ 73. Her testimony about this crucial conversation is not credible.

(xiii)  Several Data Center employees knew, while Blake was still employed, that he had changed his cell number to avoid being contacted during his off hours.  PSSOF ¶ 77 – 78.

(xiv)  Blake had to work with Verizon to change his number and then spend significant time and effort notifying friends and family that he had changed my number. PSSOF ¶ 72. By changing his number, he also ran the risk of never receiving calls or texts from friends and family who did not know he changed my number. In this day and age, there is almost no reason for anyone to go through the hassle and inconvenient of changing

6

their phone number. If someone is stalking you, you can simply block their number from being able to call or text.

(xv)   Following this exchange with Ms. Meyer, Ms. Meyer made Blake enter his new phone number into SRP's systems. PSSOF ¶ 76.

(xvi)  In his deposition, Blake was asked when Ms. Meyer removed the two hours from my timesheet and contacted him to say, "Nice try."  PSSOF ¶ 64. He said that he was not sure exactly when that happened. PSSOF ¶ 65. He has since had time to reflect, and he is now certain it occurred in August or September 2018. PSSOF ¶ 65. He is now certain the exchange occurred in August or September 2018 because he has since reviewed his Verizon records and confirmed that he obtained a new cell phone number no later than September 27, 2018. PSSOF ¶ 66. Blake is now certain the exchange with Ms. Meyer occurred in August or September 2018 because that exchange with Ms. Meyer is what prompted him to shortly thereafter change his phone number. PSSOF ¶ 67. After that exchange, he felt that he had no other choice but to change his phone number because he was constantly being contacted for assistance during his off hours, and Ms. Meyer refused to pay him anything for these overtime hours. PSSOF ¶ 68.

(i)    Ms. Meyer and Mr. Kosmal knew that Blake was rarely, if ever, able to take a 30-minute uninterrupted lunch break because he was often working alone. PSSOF ¶ 79. Even when he was working with someone else, it was often not possible to step away for 30 minutes or more. PSSOF ¶ 80.

(ii)   Blake was never once paid more than ten hours for any shift he ever worked, even though he worked 10.5 hours each shift, and was often unable to take a lunch. PSSOF ¶ 86.

(xvii)  Ms. Meyer knew from approving Blake's timesheets each week that he almost never took time off work, and thus, any additional hours he may have been working would have exceeded forty hours in a work week. PSSOF ¶ 120.

(xviii) SRP vaguely seems to represent to the Court that perhaps Blake was paid overtime for the time he spent providing assistance to employees outside of his normal work schedule. However, Ms. Meyer testified that Blake was never paid anything for any of the time he spent providing assistance to Data Center employees outside his normal work hours because she believes that there was never a single occasion in which Blake ever provided any such assistance. PSSOF ¶ 57 – 58; *see also* Exh. I, *generally*, attached to PSSOF.

(xix)   Her testimony that she does not believe Blake ever provided assistance to Data Center employees outside of his normal work hours is not credible given the documentary and testimony evidence to the contrary. *Id.* Her testimony nevertheless confirms what Blake's timesheets show, which is that Blake was never paid anything for the time he spent providing assistance to Data Center employees outside his normal work hours. *Id.*; *see also* PSSOF ¶¶ 119 – 120.

(xx)    Ms. Meyer and Mr. Kosmal knew that Blake was routinely required to arrive a few hours early or stay a few hours late (generally two to three hours on each occasion) to help cover the severely understaffed Data Center. PSSOF ¶ 121.Ms. Meyer and Mr. Kosmal knew that Blake was not being anything for these hours. *Id.*

(xxi)   Ms. Meyer worked with Blake during the day shift. *See generally* Exh. I to PSSOF. She could observe whether Blake was able to take a lunch. *Id.*

(xxii)  Ms. Meyer approved all of Blake's timesheets. PSSOF ¶ 120.

(xxiii) Ms. Meyer admits she reported everything that happened in the office to Mr. Kosmal. *See generally* Exh. I to PSSOF.

(xxiv) The only time Blake was paid overtime was when he covered someone's entire shift or when he worked on Disaster Recovery Days. PSSOF ¶ 122 – 124. Disaster Recovery Day is a day when all employees discuss what to do in the event of a disaster. PSSOF ¶ 123.

(xxv) There were no situations in which Blake was ever paid 10.5 hours (for working through lunch) or 11 or 12 hours (for arriving early, staying late, or providing assistance after his schedule). PSSOF ¶¶ 92, 113, 122

(xxvi) There were also no occasions in which Blake was ever paid for providing assistance to employees on his days off.

(xxvii) All of the hours he worked (and was paid) were for his normally scheduled workdays, as well as occasional Disaster Recovery Days and days where he covered someone's entire shift. PSSOF ¶ 121 – 123.

**V.    SRP Should Have Known Blake was Working Overtime.**

There are additional facts that create a genuine fact dispute about whether SRP should have known Blake was working overtime.

(i)    The Data Center was severely understaffed, and there were many days where Blake worked alone. On such days, it was not possible to take a lunch. PSSOF ¶ 108.

(iii)   Blake was able to access his work email from home throughout the Relevant Time using any computer, including his home computer. PSSOF ¶ ¶ 38 – 40.

(iv)   From March 2020 to October 2020, Blake could access all of SRP's systems from the SRP supplied laptop that he was required to use while at home during the pandemic.  PSSOF ¶ 42 – 45.

(v)     Blake was never provided training on how to report overtime for the time he spent providing assistance to Data Center employees outside his normal work hours. PSSOF ¶¶ 116, 127 – 133.

(vi)    It was Plaintiff's understanding that he needed to deduct thirty minutes each shift for his lunch break, even on days when he was unable to take a 30-minute lunch break. PSSOF ¶ 84.

(vii)   SRP's "robust" overtime policy was not in effect while Blake was employed. PSSOF ¶ 124.

(viii)  Ms. Meyer and Mr. Kosmal knew or at least should have known that the Analysts were not able or willing to assist. PSSOF ¶ 134. They also knew or should have known that many of the analysts were not competent to address certain questions. *Id.*

(ix)    Ms. Meyer and Mr. Kosmal knew that Blake was the most experienced Operator and that there were many occasions when an urgent issue needed to be addressed that required someone like Blake with more experience to resolve. PSSOF ¶¶ 21 – 22.

(x)     SRP destroyed all of Blake's work emails. PSSOF ¶¶ 140 – 145. These emails are the best evidence showing that Blake routinely accessed his work email after hours to send emails to his coworkers, including Ms. Meyer and Mr. Kosmal. *Id.*

**VI.    Blake's "Self-serving" Testimony is Sufficient to Create a Fact Issue.**

SRP identifies some of the many fact issues in their Motion for Summary Judgment, but contrary to the standards for summary judgment, dismisses each of them because they are based on Blake's self-serving testimony. Doc. 63 at 7:8 – 10.

"Because a party's own testimony will nearly always be self-serving, the mere self-serving nature of testimony does not permit a court to discount that testimony except where the testimony 'states only conclusions and not facts that would be admissible evidence.'" "We have previously acknowledged that declarations are often

self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position. *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir.2007) (holding that the district court erred in disregarding declarations as "uncorroborated and self-serving").

"Although the source of the evidence may have some bearing on its credibility and on the weight it may be given by a trier of fact, the district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co*., 784 F.3d 495, 498 (9th Cir. 2015). "Nigro's declaration and deposition testimony, albeit uncorroborated and self-serving, were sufficient to establish a genuine dispute of material fact on Sears's discriminatory animus. He related statements made to him both in person and over the telephone. His testimony was based on personal knowledge, legally relevant, and internally consistent. We conclude that the district court erred in disregarding Nigro's testimony in granting Sears's motion for summary judgment." *Id. Santillan v. USA Waste of California, Inc.,* 853 F.3d 1035, 1044 (9th Cir. 2017) ("An employee's 'albeit uncorroborated and self-serving' testimony is sufficient to establish a prima facie workplace discrimination case if a reasonable jury could infer discrimination from the employee's testimony.").

Blake's declaration sets forth specific facts, which are supported by attached exhibits and corroborating testimony from his coworkers on many of the key points. Although SRP would like for the Court to accept everything Ms. Meyer has to say as the final word, there are many reasons why key aspects of her testimony are not credible. The jury should resolve these credibility disputes – not the Court.

### VII. The Facts Above Demonstrate that There is a Fact Dispute Concerning Whether SRP's Actions Were "Willful."

"A violation of the FLSA is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'" *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 918 (9th Cir. 2003) (citing cases). If the conduct is "willful," the longer three-year statute of limitations applies. *Id.* 29 U.S.C. § 255(a).

11

1    The facts above demonstrate that there is a genuine fact dispute about whether
2    SRP recklessly disregarded its responsibilities under the FLSA.

3    **VIII.  Conclusion**

4    SRP's Motion for Summary Judgment should be denied in its entirety because
5    there are fact issues that preclude summary judgment on both counts. There are fact
6    disputes regarding whether SRP knew or should have known Blake was working
7    overtime. There are also fact disputes regarding whether SRP recklessly disregarded its
8    responsibilities under the FLSA.

9

10

11    DATED this 28th day of February, 2022.

12                                              **Jaburg & Wilk, P.C.**

13

14                                              /s/ Jeffrey A. Silence
                                                Jeffrey A. Silence
15                                              Alden A. Thomas
                                                Corrinne R. Viola
16                                              Attorneys for Plaintiff

17

18

19                                *Certificate of Service*

20    I hereby certify that on this 28th day of February, 2022, I electronically transmitted the
      attached document to the Clerk's Office using the CM/ECF System for filing, and for
21    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

22

23    Julia S. Acken
      Dina G. Aouad
24    JENNINGS, STROSS & SALMON, P.L.C.
      One East Washington Street, Suite 1900
25    Phoenix, AZ 85004
      jacken@jsslaw.com
26    daouad@jsslaw.com
      *Attorneys for Defendants*
27

28

      /s/Laura Underwood